UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

|  |  |
|---|---|
| COREY RAYNARD WOODSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No.: 2:12-cv-507 |
| ) | |
| HAROLD W. CLARKE, Director, Virginia ) | |
| Department of Corrections, ) | |
| ) | |
| Respondent. ) | |

## REPORT AND RECOMMENDATION

Before the Court is the Petitioner's, Corey Raynard Woodson ("Woodson"), Petition for a Writ of *Habeas Corpus* filed pursuant to 28 U.S.C. § 2254 ("Petition"), ECF No. 1, and the Respondent's Motion to Dismiss, ECF No. 8. The Motion was referred for disposition to the undersigned U.S. Magistrate Judge ("undersigned") pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. After reviewing the briefs, the undersigned disposes of the Motion on the papers without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** the Respondent's Motion to Dismiss, ECF No. 8, be **GRANTED** and Woodson's Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE.**

### I. FACTUAL AND PROCEDURAL BACKGROUND

Woodson was convicted on March 10, 2009, in Chesapeake Circuit Court of first-degree murder, use of a firearm in the commission of a felony, and possession of a firearm by a

convicted felon, and he was sentenced on August 3, 2009, to life in prison plus five years. He, by counsel, appealed to the Virginia Court of Appeals, alleging insufficiency of the evidence. The appeal was denied on April 22, 2010. Woodson, by counsel, then appealed to the Virginia Supreme Court, which refused the appeal on February 16, 2011.

Woodson subsequently petitioned for *habeas* relief with the Virginia Supreme Court, claiming the following:

1. the prosecution failed to prove the above offenses occurred in Chesapeake, Virginia, pursuant to Virginia Code § 19.2-239;

2. similarly, the prosecution failed to prove the above offenses occurred in Virginia pursuant to Virginia Code § 17.1-513;

3. the testimony of a juvenile witness was "incredible" and "unworthy of belief";

4. the trial court failed to examine this witness before she testified;

5. the prosecution knowingly used the perjured testimony of a second witness;

6. trial counsel conceded Woodson's guilt during opening and closing argument in violation of his Sixth Amendment right to effective assistance of counsel; and

7. likewise, trial counsel did not interview and call to testify as witness at trial the sister of the juvenile witness, again, in violation of his Sixth Amendment right.

The Supreme Court barred the first, fourth, and fifth claims as non-jurisdictional and not cognizable in *habeas* because Woodson could have but did not raise them at trial and on direct appeal. The second claim lacked merit in light of the record. The third claim was barred, having been raised at trial and on direct appeal, and the sixth and seventh claims failed to meet either prong of *Strickland. See Strickland v. Washington*, 466 U.S. 668, 687 (1984). After disposing of

2

these claims, the Virginia Supreme Court dismissed Woodson's *habeas* petition on August 21, 2012.

The Court received the instant Petition, Woodson's first, on September 12, 2012, and Woodson alleges therein the same claims that he raised in his state *habeas* petition. The Virginia Attorney General, on behalf of the Respondent, submitted a Rule 5 Answer, Motion to Dismiss, brief in support, and *Roseboro* notice on February 27, 2013. Woodson responded to the Motion to Dismiss on March 25, 2013. The Respondent has not replied, and the time to do so has lapsed. Therefore, the Motion is ripe for disposition.

## II. PROCEDURAL ISSUES

### A. Exhaustion

Section 2254 petitions challenge a state's custody of a prisoner "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "In the interest of giving the state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing, a state prisoner must exhaust all available state remedies before he can apply for federal *habeas* relief." *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998) (citing 28 U.S.C. § 2254(b); *Matthews v. Evatt*, 105 F.3d 907, 910-11 (4th Cir. 1997)). "To exhaust state remedies, a *habeas* petitioner must fairly present the substance of his claim to the state's highest court." *Id.* (citing *Matthews*, 105 F.3d at 911). In Virginia, that court is the Virginia Supreme Court. "The burden of proving that a claim is exhausted lies with the *habeas* petitioner." *Id.* (citing *Mallory v. Smith*, 27 F.3d 991, 994 (4th Cir. 1994)).

3

Because the claims asserted in the Petition are identical to those that Woodson raised before the Virginia Supreme Court in his state *habeas* petition, the undersigned finds the exhaustion requirement has been met here. *See* ECF No. 10 at 5, ¶ 9 ("The petitioner raised each of his current claims in his state *habeas* petition filed in Virginia Supreme Court.").

## B. Procedural Default

"A distinct but related limit on the scope of federal *habeas* review is the doctrine of procedural default." *Breard*, 134 F.3d at 619. This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a *habeas* petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the *habeas* petitioner has procedurally defaulted his federal *habeas* claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "A state procedural rule is adequate if it is 'regularly or consistently applied by the state court' and is independent if it does not rely on a rule of federal constitutional law." *Silk v. Johnson*, No. 3:08cv271, 2009 WL 742552, at *2 (E.D. Va. Mar. 20, 2009) (quoting *Mu'Min v. Pruett*, 125 F.3d 192, 196 (4th Cir. 1994) (citing *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985))). "After determining that a state court relied on an adequate and independent state-law ground for decision, [courts] 'may ... not [inquire] into whether the state court properly applied its own law.'" *Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998) (citing *Barnes v. Thompson*, 58 F.3d 971, 974 n.2 (4th Cir. 1995)).

Woodson raised the following claims before the Virginia Supreme Court in his state *habeas* petition: (1) the prosecution failed to prove the above offenses occurred in Chesapeake, Virginia, pursuant to Virginia Code § 19.2-239; (2) the trial court failed to examine a juvenile witness before she testified; and (3) the prosecution knowingly used the perjured testimony of a

second witness. The Supreme Court barred these claims as non-jurisdictional and not cognizable in *habeas* because Woodson could have but did not raise them at trial and on direct appeal. *See Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974) ("The trial and appellate procedures in Virginia are adequate in meeting procedural requirements to adjudicate State and Federal constitutional rights and to supply a suitable record for possible *habeas corpus* review. A prisoner is not entitled to use *habeas corpus* to circumvent the trial and appellate processes for an inquiry into an alleged non-jurisdictional defect of a judgment of conviction."). "This procedural bar constitutes an adequate and independent state law ground for default." *Vinson v. True*, 436 F.3d 412, 417 (4th Cir. 2006) (citing *Wright v. Angelone*, 151 F.3d 151, 159-60 (4th Cir. 1998)). Therefore, these claims are procedurally defaulted.

"Absent a showing of cause and prejudice or a fundamental miscarriage of justice due to Petitioner's actual innocence, this Court cannot review the merits of a procedurally defaulted claim." *Silk*, 2009 WL 742552, at *3 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998), and *Harris v. Reed*, 489 U.S. 255, 262 (1989)). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," *Murray v. Carrier*, 477 U.S. 478, 488 (1986), which here depends on showing ineffective assistance of counsel, *id.* ("Ineffective assistance of counsel, then, is a cause for a procedural default.").

Woodson attempts to demonstrate cause by claiming his counsel provided ineffective assistance by filing a direct appeal in the Virginia Supreme Court after the Virginia Court of Appeals granted his motion to withdraw as counsel. *See* ECF No. 14 at 5-6. However, this claim is meritless. *See Clozza v. Murray*, 913 F.2d 1092, 1104 (4th Cir. 1990) (meritless

5

ineffective assistance of counsel claim cannot excuse procedural default). Woodson was appointed counsel to effectuate an appeal before the Virginia Court of Appeals. Counsel did so and moved for withdrawal pursuant to *Anders v. California*, 386 U.S. 738 (1967), as well as for an extension of time for Woodson to submit a *pro se* appeal. Although the Court of Appeals granted the motions, Woodson submitted nothing. It subsequently denied the appeal. Woodson, *pro se*, then appealed to the Virginia Supreme Court and requested counsel.[1] The Supreme Court granted the request and reappointed Woodson's counsel from the Virginia Court of Appeals. Counsel moved for withdrawal pursuant to *Anders* and for an extension of time for Woodson to submit a *pro se* supplemental appeal. Although the Supreme Court granted the motions, Woodson, again, submitted nothing. It subsequently refused the appeal without appointing him new counsel.

Counsel's actions on Woodson's behalf were proper given counsel's reappointment by the Virginia Supreme Court. It would be an entirely different issue if the Supreme Court had never reappointed counsel because then counsel would have been acting without appropriate authorization from any court. However, that is not the case here: counsel was appointed to effectuate an appeal before the Virginia Court of Appeals on Woodson's behalf, allowed to withdraw by the Court of Appeals, and duly reappointed by the Virginia Supreme Court. Counsel properly discharged his duties to Woodson by submitting an *Anders* petition and moving to withdraw from representation. *See id.* at 741-42 (discussing procedural requirements for counsel to properly withdraw from appellant's frivolous appeal without violating the Sixth Amendment).

---

[1] This request was submitted to the Virginia Court of Appeals, which redirected it to the Virginia Supreme Court.

The record also demonstrates that Woodson never objected to the Virginia Supreme Court's reappointment of counsel. Moreover, despite being afforded the opportunity by the Virginia Supreme Court and Court of Appeals, he never submitted a *pro se* appeal. It appears Woodson simply waited for different counsel to be appointed. Therefore, the "cause" Woodson believes excuses procedural default of the above claims is not cause whatsoever as counsel's performance during Woodson's appeals was not "so ineffective as to violate the Federal Constitution." *Edward v. Carpenter*, 529 U.S. 446, 451 (2000) (citation omitted). Absent cause, a prejudice analysis is unnecessary and will not be discussed here. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995) (noting that courts should not consider the issue of prejudice absent cause to avoid the risk of reaching an alternative holding). Furthermore, despite baldly asserting and alleging in a conclusory fashion his innocence, ECF No. 14 at 7 ("[T]he petitioner contends that he's innocent of the crimes for which he has been convicted and sentenced."), Woodson cannot claim a fundamental miscarriage of justice because he offers no argument, new reliable evidence, or factual contentions to substantiate this claim, *Royal v. Taylor*, 188 F.3d 239, 244 (4th Cir. 1999) ("In order to use an actual innocence claim as a procedural gateway to assert an otherwise defaulted claim, 'the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the *new evidence*.'") (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)) (emphasis added). Accordingly, the undersigned declines to address the merits of the above three claims, finding they are procedurally defaulted.

### C. Federal Question

Another of Woodson's claims is that the prosecution failed to prove the above offenses occurred in Virginia pursuant to Virginia Code § 17.1-513, which concerns the jurisdiction of

Virginia state trial courts. After reviewing the record, specifically the trial transcripts, exhibits, and trial counsel's stipulation as to venue, the Virginia Supreme Court found this claim lacked merit, which is not contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of facts. *Bell v. Jarvis*, 236 F.3d 149, 163 (4th Cir. 2000) (*en banc*) ("[Courts] must uphold the state court's summary decision unless [their] independent review of the record and pertinent federal law persuades [them] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented.") (citations omitted). Simply put, the evidence adduced at trial clearly and unequivocally established that the above offenses transpired in *Chesapeake, Virginia*. *See* ECF No. 10, attach. 1 at 56, 60, 62, 65-66, 67, 69-70, 72-73, 80.

Alternatively, the Court may not review the preceding claim because Woodson relies on Virginia state case law, and the Virginia Supreme Court adjudicated this precise issue. *See Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976) (*per curiam* decision) ("Determination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary.") (citation omitted). Specifically, the Supreme Court determined that the trial court properly exercised subject-matter jurisdiction over Woodson as to the above offenses. Because this holding constitutes a final determination of state law by Virginia's highest court, the Court is bound and, therefore, the above claim should be denied. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions.") (citation omitted).

8

### III. STANDARD OF REVIEW

If a state court addresses the merits of a claim raised in a § 2254 petition, federal *habeas* relief is foreclosed unless the petitioner demonstrates that the state court's adjudication is contrary to or an unreasonable application of clearly established federal law or is based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). An adjudication is "contrary to" federal law if the state court "arrives at a conclusion opposite to that reached by [the U.S. Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Alternatively, an adjudication "unreasonabl[y] appli[es]" federal law if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the [petitioner's] case." *Id.* Notably, "reasonableness" is an objective standard, *id.* at 410, and when reviewing the state court's factual determinations for their (un)reasonableness, the Court "presume[s] the [state] court's factual findings to be sound unless [the petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(e)(1)); *see, e.g.*, *Lenz v. Washington*, 444 F.3d 295, 300-01 (4th Cir. 2006).

### IV. ANALYSIS

#### A. Witness Credibility/Sufficiency of the Evidence

Proceeding to the merits of Woodson's claim that the testimony of a juvenile witness was "incredible" and "unworthy of belief," given Woodson's *pro se* status, the undersigned construes this claim liberally to be a challenge to the sufficiency of the evidence. However, when

Woodson raised this claim before the Virginia Court of Appeals, it was rejected for the following reasons:

> [T]he evidence proved that on July 1, 2008, [a juvenile] witnessed appellant approach Dontrell Whitehurst from behind and shoot him in the neck. After the victim fell to the ground, appellant shot him eight more times. [The juvenile witness] knew appellant and observed the incident from approximately five feet away.
> Australia Hill testified that later that day, appellant stated he had murdered someone in Pleasant Park, where Whitehurst's murder occurred. The following day, Hill was wired by the police and met with appellant. Appellant admitted shooting Whitehurst multiple times.
> Appellant argues[, as he does in the Petition,] that "the eyewitness's trial testimony was contradicted by her previous testimony and by the testimony of the medical examiner, whose conclusion as to how the shooting occurred is very different from that of the eyewitness."
> The jury believed the Commonwealth's witnesses and rejected appellant's evidence.
> ....
> Although the medical examiner's explanation of the shooting varied somewhat from [the juvenile witness's] account, [the witness] consistently maintained that she observed appellant shoot Whitehurst at close range. Her testimony was corroborated by appellant's repeated admission to Hill that he shot and killed the victim. We find no error with the jury's credibility determination. The evidence amply established appellant shot and killed Whitehurst. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant was guilty of first-degree murder, use of a firearm during the commission of a felony, and possession of a firearm by a convicted felon.

ECF No. 10, attach. 1 at 26-27. The Virginia Supreme Court subsequently refused Woodson's appeal.

On federal *habeas* review and, specifically, in considering a challenge to the sufficiency of the evidence, courts inquire as to "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Courts defer to the state court's factual findings, which are presumed to be correct.

28 U.S.C. § 2254(d); *Summer v. Mata*, 449 U.S. 539, 546-47 (1981); *Hayes v. Ponton*, No. 1:12cv1126 (AJT/IDD), 2013 WL 3730679, at *6 (E.D. Va. July 11, 2013) (citations omitted). Courts only ascertain whether the trier-of-fact rationally decided to convict the petitioner. *Herrera v. Collins*, 506 U.S. 390, 402 (1993).

On direct appeal to the Virginia Court of Appeals, Woodson, by counsel, alleged the following inconsistencies between a juvenile witness's testimony in a preliminary hearing and her testimony at trial: "at the preliminary hearing ..., she could only say that [Woodson] fired more than once, while at trial she had testified that [he] had fired at least eight times"; she testified "at the preliminary hearing that a dark gun had been used in the shooting," but at trial she described "the gun as silver"; and "during her preliminary hearing testimony she had claimed to have only seen [Woodson] once prior to the day of the shooting," but "at trial she claimed to have seen him more than once prior to that date." ECF No. 10, attach. 2 at 7. These alleged inconsistencies are identical to those that Woodson raises in the Petition to substantiate his claim that the juvenile witness's testimony at trial was "incredible" and "unworthy of belief." *See* ECF No. 1 at 17. However, the jury that convicted Woodson made a determination as to the juvenile witness's credibility, and the Virginia Court of Appeals found no error in this determination. The Court of Appeals, moreover, found the evidence amply demonstrated Woodson's guilt to the above offenses beyond a reasonable doubt. As much as Woodson may desire, the Court does not possess a "license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). For these reasons and those expressed in the Court of Appeals' opinion, the undersigned recommends denying the

above claim, finding that a rational trier-of-fact could have found Woodson guilty of the above offenses beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319.

### B. Ineffective Assistance of Counsel

The Sixth Amendment to the U.S. Constitution provides that "the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. The U.S. Supreme Court has interpreted this right to provide a defendant with "'the right to the *effective* assistance of counsel.'" *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)) (emphasis added). In order to demonstrate that counsel's assistance was ineffective, a petitioner must establish that counsel's performance fell below an objective standard of reasonableness and that this unreasonable performance prejudiced the petitioner. *Id.* at 687-88. However, "unsubstantiated and largely conclusory statements" do not carry the petitioner's burden as to the two *Strickland* prongs. *United States v. Turcotte*, 405 F.3d 515, 537 (7th Cir. 2005).

When evaluating counsel's performance under the first *Strickland* prong, courts "must be highly deferential." *Strickland*, 466 U.S. at 689; *see Kimmelman v. Morrison*, 477 U.S. 365, 381-82 (1986) (discussing the "highly demanding" *Strickland* standard). To establish constitutionally deficient performance on counsel's part, the petitioner must demonstrate that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Such a demonstration must exceed simply establishing that counsel's performance was below average given "effective representation is not synonymous with errorless representation." *Springer v. Collins*, 586 F.2d 329, 322 (4th Cir. 1978); *see Strickland*, 466 U.S. at 687. Because it is particularly easy to

challenge, after the fact, an unsuccessful act, omission, or strategy, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Therefore, courts should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Concerning the second *Strickland* prong, the petitioner must "affirmatively prove prejudice," requiring a demonstration that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. If the petitioner's demonstration fails under either *Strickland* prong, courts may stop there and need not evaluate the other prong. *United States v. Roane*, 378 F.3d 382, 404 (4th Cir. 2004).

First, Woodson claims trial counsel was ineffective by conceding his guilt during opening and closing argument. Although counsel stipulated to the victim's cause of death, identification of his body, when he died, and venue, Woodson's defense throughout the trial was that he was not the offender and that the evidence was insufficient to prove that he was. *See* ECF No. 10, attach. 1 at 56 ("[S]omething terrible happened on July 1st of last year. Mr. Whitehurst was killed. You have heard us stipulate to that. He was shot ten times. All of that is true and in the city of Chesapeake. All of that is true.... [T]he issue raised is not whether Mr. Whitehurst was murdered but whether the evidence proves beyond a reasonable doubt that my client is the murderer."), 72-73 ("[Y]ou will remember that early on I agreed to stipulate that this young man was murdered, the cause of death, the identity, the fact that it occurred in Chesapeake.... [W]e

13

don't want to get deterred from the basic observation of whether the evidence truly shows beyond a reasonable doubt that my client is guilty of murder as charged."). This observation coupled with Woodson's failure to specifically allege what counsel said that constituted a concession of guilt form the basis of the Virginia Supreme Court's rejection of Woodson's *Strickland* claim. The undersigned concurs. Not only is this claim plainly unsubstantiated, counsel's stipulation as to certain facts of the offense does not equate to a concession of Woodson's guilt. Woodson apparently now wishes counsel had contested whether the victim had died from gunshot wounds, whether the body was that of Dontrell Whitehurst, whether he died on July 1, 2008, and whether he died in Chesapeake, Virginia. However, it was counsel's trial strategy to stipulate to this information, and the Virginia Supreme Court found that these stipulations did not rise to the level of a *Strickland* violation, let alone constitute a concession of guilt.[2] The undersigned does not find this decision to be an unreasonable application of law or an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2).

Second, Woodson claims trial counsel was ineffective by failing to interview and call to testify at trial the sister of the juvenile witness who had testified at trial. Woodson believes the juvenile witness informed her sister that she was unable to identify the offender until law enforcement implied who it was. Like the preceding claim, the Virginia Supreme Court rejected this one, finding Woodson never notified counsel or the trial court of his desire for the sister to testify at trial. The Supreme Court continued,

---

[2] To the extent Woodson proffers an April 3, 2013, letter from trial counsel to a third party to support his claim that counsel conceded his guilt at trial, that document is irrelevant. ECF No. 15 at 5 ("It is sad, but not surprising that Mr. Woodson is still unable to accept the fact that his commission of a senseless, exceptionally brutal murder in broad daylight, in front of witnesses, and then bragging about it on tape are the reasons he is where he is."). It appears only to contain an after-the-fact, after-the-trial statement by counsel as to Woodson's guilt, which had previously been found by a jury beyond a reasonable doubt.

14

> To the contrary, the record demonstrates that counsel repeatedly asked petitioner for the names of witnesses prior to trial and petitioner conceded during the plea colloquy that he did not give counsel any names. Further, during the plea colloquy, the trial court granted petitioner time to discuss potential witnesses with counsel and petitioner gave counsel the name of one witness ... who was in the courtroom and subsequently testified at trial. Additionally, petitioner does not proffer an affidavit to demonstrate what the testimony of [the juvenile witness's] sister would have been had she testified or to verify that [the] sister would have testified as he contends.

ECF No. 10, attach. 4 at 4-5. Before trial, counsel informed the trial court,

> At one point prior to trial, back when we were talking in October, he[, meaning Woodson,] indicated that he had some witnesses that he wanted me to subpoena. I met with him a few days after that. He stated he reconsidered, that there were no witnesses. He never changed that. Nine days ago, I talked to him again to confirm that there were no witnesses he wanted to be subpoenaed. He confirmed there was none he wanted subpoenaed.
> ....
> He specifically said there are no witnesses.

*Id.*, attach. 1 at 34, 35. Woodson did not but could have objected to these statements at the hearing when they were uttered. Upon inquiry by the court, Woodson revealed he knew of certain witnesses, but he did not share their identities with counsel, despite counsel's request, because he "didn't have the information at the time." *Id.*, attach. 1 at 46. After additional prodding by the court, Woodson identified one witness, who was in the courtroom at the time and who testified at trial. No other individuals, let alone the sister of the juvenile witness, were named.[3] And courts certainly do not expect nor does the Sixth Amendment require trial counsel to read his client's mind in order to divine whether additional witnesses exist who may provide evidence in support of his defense. Therefore, the undersigned does not find the Virginia Supreme Court's rejection of this claim to be an unreasonable application of law or an

---

[3] The old adage, "speak now or forever hold your peace," is particularly apt here.

15

unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, Woodson has failed to establish either *Strickland* claim.

## V. RECOMMENDATION

For these reasons, the undersigned finds Woodson's first, fourth, and fifth claims are procedurally defaulted. The undersigned further finds as to the second, third, sixth, and seventh claims, that the Virginia Supreme Court's decision is not contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of facts. Alternatively, Woodson's second claim is not cognizable in federal *habeas* review. After disposing of these claims, the undersigned **RECOMMENDS** the Respondent's Motion to Dismiss, ECF No. 8, be **GRANTED** and Woodson's Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE.**

## VI. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a

16

judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the Petitioner and counsel of record for the Respondent.

/s/ Lawrence R. Leonard
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
August 19, 2013

## CLERK'S MAILING CERTIFICATE

A copy of this Report and Recommendation was mailed on this date to the following:

Mr. Corey Raynard Woodson, #1388318
Sussex I State Prison
24414 Musselwhite Drive
Waverly, Virginia 23890
*Pro Se* Petitioner

Ms. Katherine Quinlan Adelfio, Esq.
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
Counsel for the Respondent

Fernando Galindo
Clerk of the Court

By: [signature]
Deputy Clerk
August 19, 2013